WAUKEEN Q. McCOY, ESQ. (SBN: 168228)
McCOY LAW FIRM, P.C
251 Post St., Suite 301
San Francisco, CA. 94108
Telephone: (415) 675-7705
Facsimile: (415) 675-2530
mail@mccoyslaw.com

Attorney for Plaintiffs,
AMY NICKERSON,
HARDY NICKERSON, SR.,
and HARDY NICKERSON, JR.

# UNITED STATES DISTRICT COURT

## NOTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY NICKERSON, an individual; HARDY NICKERSON, SR., an individual; and HARDY NICKERSON, JR., an individual;<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN AIRLINES, INC., a corporation; and DOES 1-10, inclusive;<br><br>Defendants. | Case No. 3:23-cv-6488<br><br>**COMPLAINT FOR DAMAGES:**<br><br>**1. DISCRIMINATION BASED ON RACE IN VIOLATION OF TITLE II OF THE CIVIL RIGHTS ACT OF 1964 (42 U.S.C. § 2000a** *et seq.***)**<br><br>**2. DISCRIMINATION BASED ON RACE IN VIOLATION OF THE UNRUH CIVIL RIGHTS ACT (Cal. Civ. Code §51** *et seq.***)**<br><br>**DEMAND FOR JURY TRIAL** |

Comes now Plaintiffs: AMY NICKERSON, HARDY NICKERSON, SR., and HARDY NICKERSON, JR. and complain of the named Defendants as follows:

1.     This action is brought pursuant to 42 U.S. Code § 2000a Title II of the 1964 Civil Rights Act and the Unruh Civil Rights Act, as set forth in California Civil Code section 51, *et seq.*

2.      42 U.S.C. § 2000a, also known as Title II of the Civil Rights Act of 1964, prohibits discrimination in public accommodations. Title II allows customers to pursue claims of discrimination if the customers "received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory."

3.      California's Unruh Civil Rights Act guarantees that:

> [a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

51 Cal. Civ. Code 51(b).

## JURSDISCTION AND VENUE

4.      This Court has jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331 and §1343. The Court has supplemental jurisdiction over Plaintiffs' second cause of action which is based on state law under 28 U.S.C. §1367.

5.      Venue is proper in this Court under 28 U.S.C. §1391(b)(2) because all incidents, events, or occurrences giving rise to this action occurred in the County of San Francisco in the State of California.

6.      Plaintiffs have been damaged in excess of the jurisdictional amount of this Court.

7.      Divisional Assignment. Assignment to the San Francisco or Oakland Division is proper under Civil L.R. 3-2(c) because a substantial part of the events or omissions that give rise to the claims occurred therein.

1

## INTRODUCTION

8.      This action arises out of events in related to commercial airline facilities owned, managed, and operated by Defendants in which Plaintiffs were or are attempting to be served as customers and members of the general public.

9.      African Americans being harassed and killed while traveling was an integral part of the Jim Crow South in America, which has left a great stain on America's history. The use of First Class cabins formerly known as White's Only cabins are often utilized to segregate passengers by race.

10.     Unfortunately, African Americans experiencing harassment while traveling (including the horrific and well-documented experiences of Rosa Parks, Rodney King, and Tyre Nichols) has been and continues to be an issue and is a matter of public concern that must be addressed. African Americans, such as the Nickerson family, NFL player Odell Beckham Jr., entertainer Talib Kweli, and track and field star Sha'Carri Richardson, all have been harassed by American Airlines, Inc.'s employees, while traveling first class.

11.     No one wants to be relegated to second class status because of their race. Members of the public should not be forced to interact with a commercial aviation company that may degrade them and excluded them from full enjoyment of its services — while at the same time "tolerating" their presence in the back of the plane.

## THE PARTIES

12.     Plaintiff AMY NICKERSON is an African American female. At all relevant times mentioned in this complaint, she was within the jurisdiction of the State of California and as such is and was free and equal, and no matter what her sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital state, or sexual orientation is

and was entitled to the full and equal accommodations, advantages, facilities, privileges and services in all business establishments of every kind whatsoever.

13.    Plaintiff HARDY NICKERSON, SR. is an African American male. At all relevant times mentioned in this complaint, he was within the jurisdiction of the State of California and as such is and was free and equal, and no matter what his sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital state, or sexual orientation is and was entitled to the full and equal accommodations, advantages, facilities, privileges and services in all business establishments of every kind whatsoever.

14.    Plaintiff HARDY NICKERSON, JR. is an African American male. At all relevant times mentioned in this complaint, he was within the jurisdiction of the State of California and as such is and was free and equal, and no matter what his sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital state, or sexual orientation is and was entitled to the full and equal accommodations, advantages, facilities, privileges and services in all business establishments of every kind whatsoever.

15.    Plaintiffs are and at all times mentioned in this complaint were residents of the County of Alameda in the State of California.

16.    Upon information and belief, Defendant AMERICAN AIRLINES, INC. (hereinafter "American Airlines") is and at all times mentioned in this complaint was a Delaware corporation licensed to and doing business in the County of San Francisco, State of California.

17.    Plaintiffs incorporate DOES 1 through 10, inclusive, herein under fictitious names. Plaintiffs do not know their true names and capacities. When Plaintiffs ascertain the Doe Defendants' true names and capacities, Plaintiffs will amend this complaint by inserting their true names and capacities. Plaintiffs are informed and believe, and on the basis of that information

and belief, allege that each Defendant named herein as a Doe acted with the other Defendants and is responsible for the damages to Plaintiffs herein alleged. Each reference in this complaint to Defendants, or to any of them, also refers to all Defendants sued under fictitious names.

18.     Plaintiffs are informed and believe, and thereon alleges that, at all times herein mentioned, each of the Defendants, including each of the DOE Defendants, are responsible in some manner for one or more of the events and happenings, and proximately caused the injuries and damages, hereinafter alleged.

19.     Plaintiffs are informed and believe, and on the basis of that information and belief, allege that each of the Defendants sued herein are the agents, servants, employees, licensees, guarantees, invitees, or assignees of each other, and in doing the things herein alleged acted within the course and scope of such agency, employment guaranty, assignment, license, invitation and/or relationship and with the full knowledge and consent of the other.

20.     At all relevant times mentioned herein, Defendants aided and abetted the acts and omissions of the other Defendants in proximately causing the damages alleged herein.

## STATEMENT OF FACTS

21.     On January 10, 2023, Plaintiffs AMY NICKERSON (hereinafter "Ms. Nickerson"), HARDY NICKERSON SR. (hereinafter "Mr. Nickerson, Sr.") and HARDY NICKERSON JR. (hereinafter "Mr. Nickerson, Jr.") boarded American Airlines Flight 844 traveling from Charlotte, North Carolina to San Francisco, California. The Plaintiffs had purchased their First Class Cabin Tickets in Oakland, California and had begun their journey in San Francisco, California.

22.     Ms. Nickerson, Mr. Nickerson, Sr., and Mr. Nickerson, Jr. (hereinafter collectively "the Nickerson family") began boarding the plane once the announcement by the gate agent indicated that it was time for First Class (Group 1) to begin boarding.

23.     Once on the plane, the Nickerson family got situated in their seats, began getting comfortable, and were all looking at their phones and talking to one another. Mr. Nickerson, Sr. and Mr. Nickerson, Jr. were seated next to each other. Ms. Nickerson was seated in another row directly behind them, and was seated next to another passenger whom she did not know. The other passenger seated next to her was white.  People continued to board the plane as usual. It seemed to be a normal flight routine. The members of the Nickerson family were the only African Americans in the First Class Cabin.

24.     The flight was scheduled to depart at 10:15 a.m. At 10:15 a.m., the gate agent who had been in charge of boarding at the gate approached the Nickerson family holding some paper tickets in his hand. At the same time, Ms. Nickerson's iPhone beeped with an alert indicating that her seat had been changed as follows: 10:16 a.m. EST - "Your seat has been assigned. Your new seat is 20D/Aisle/Standard. Your mobile boarding pass has been updated." The employee stated that the reason why the Nickerson family was asked to leave the First Class Cabin was because the Nickerson family had been the "last to check in", and some passengers seated in First Class needed to move as the flight was over-fueled.  No request for volunteers to move to alternate seats was made.

25.     The agent, a Caucasian man who appeared to be in his sixties, informed the members of the Nickerson family that they needed to "go back to coach." He stated that he was sorry that there was a "situation" that the plane had been over-fueled, and the Nickerson family would need to "go back" to coach seats so the plane could take off. During this conversation, the Nickerson

family realized they were being stared at by their fellow passengers, and began to feel uncomfortable.

26.     After the Nickerson family refused to be removed from the First Class Cabin without a proper explanation as to why they were targeted to be moved, a Caucasian passenger began to berate the family for "playing the race card."

27.     Eventually, after continued objections from the Nickerson family, the employee allowed the Nickerson family to remain in the First Class Cabin.  Despite this, their experiences with American Airlines during the beginning of their flight tainted the rest of their trip, as they continued to experience shame, embarrassment, and humiliation for the remainder of the flight.

28.     The choice to finally allow the Nickerson family to remain in the seats they had purchased did not excuse the unlawful actions of the agent, as the humiliation and shame to the Nickerson family had already occurred. Furthermore, no one at American Airlines corrected the passenger who berated the Nickerson family or explained the situation to the other passengers. More importantly, the three other passengers who eventually volunteered to move to coach only did so after Mr. Nickerson, Sr.  voiced his concern that no choice to volunteer had been given to the passengers, and that American Airlines should have asked for volunteers. The emotional distress the Nickerson family experienced was further exacerbated by the fact that the Caucasian passengers who volunteered to move were allowed to return to First Class after the plane leveled off, an option that was not given to the Nickerson family when their seats were unilaterally changed.

29.     After the plane landed, Mr. Nickerson, Sr. shared his experiences on social media. Mr. Nickerson, Sr. tweeted @americanair about how humiliating the experience was. He told parts of the story via tweets and began to garner reactions by users and readers of Twitter. Eventually,

American Airlines tweeted that they wanted Mr. Nickerson to direct message them with his phone number to allow them to respond to the experience he had shared.

30.     On January 12, 2023, American Airlines Customer Relations Representative Barbarah Herring reached out to the Nickerson family via email. Ms. Herring stated that while she was "unable to speculate as to the motivation of the employee" who attempted to force the Nickerson family "out of first class," she did recognize that the members of the Nickerson family were treated inappropriately when asked to involuntarily leave the First Class Cabin without notice.

31.     Ms. Herring further explained that the reason why only African Americans were asked to leave the First Class cabin was because downgrade determinations were based on frequent flyer status.  This statement directly contradicted the employee who initially stated that the reason only the Nickerson family was asked to leave the First Class Cabin was because the Nickerson family had been the "last to check in."

32.     Furthermore, utilizing frequent flyer status undoubtedly can result in African Americans being labeled as non-preferred customers and being treated in an objectively discriminatory manner, as it did in this matter.  Accordingly, Ms. Herring recognized that American Airlines employees using frequent flyer status for downgrade determinations was improper and that "against better judgement, [the employee] took to the list first."

33.     Ms. Herring then stated that "what we should have done, and the employee recognizes his error, is to ask for volunteers first rather than turning directly to the list."  She further stated "I understand that three other first class passengers did volunteer to go to coach, and they were then assigned the new seats and went to sit down and that you and your family were able to stay in your originally assigned seats."

34.     American Airlines then credited the Nickerson family members 15,000 miles each in an attempt to sweep the issue under the rug without prior authorization by the Nickerson family. However, their response does not excuse the unlawful actions of the agent, as the Nickerson family suffered humiliation and shame when they were singled out by American Airlines to leave the First Class Cabin.  Furthermore, as stated above, no one at American Airlines corrected the passenger who accused the Nickerson family of "playing the race card" or explained the situation to the other passengers.  More importantly, the three other passengers who volunteered to be moved to coach only volunteered once Mr. Nickerson, Sr. voiced his concern that no choice to volunteer had been given, and that American Airlines should have asked for volunteers.

35.     In addition to the Nickerson family, as mentioned above, several other prominent African Americans have been harassed for "traveling while Black" on American Airlines.  For example, within the last year National Football League player Odell Beckham Jr., entertainer Talib Kweli, and track and field star Sha'Carri Richardson all have been harassed by American Airlines' employees while traveling on the airline.

### FIRST CAUSE OF ACTION
### DISCRIMINATION BASED ON RACE IN VIOLATION OF TITLE II OF THE CIVIL RIGHTS ACT OF 1964 (42 U.S.C. § 2000a *et seq.*)
**(As to all Defendants)**

36.     Plaintiffs incorporate by reference the factual allegations set forth in paragraphs 1 through 35 above.

37.     American Airlines' airplanes and boarding gates are places of public accommodation within the meaning of 42 U.S.C. § 2000a(b)(2).

38.     The operation of American Airlines affects commerce within the meaning of 42 U.S.C. §

2000a (c)(2).

39.     Defendants, acting through their officers, employees, and agents have implemented a policy and practice of denying to African American persons, on account of race or color, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of their airplanes and boarding gates, on the same basis as they make such available to non-African American persons. This policy and practice has been carried out, among other ways, as follows: (i) Defendants have implemented terms and conditions for service of African American persons, such as removing African Americans from the First Class Cabin, to make other passengers feel safe and comfortable: (ii) providing African American passengers with terms less favorable than the terms and conditions for service provided to white persons; (iii) Defendants treat African American customers less favorably than white customers and discourage African American persons from traveling First Class.

40.     The conduct of Defendants described above constitutes a pattern or practice of resistance to the full and equal enjoyment by African American persons of rights secured by 42 U.S.C. §2000a *et seq.*, and the pattern or practice is of such a nature and is intended to deny the full exercise of such rights. Unless restrained by Order of this Court, Defendants will continue to refuse to provide African American persons with the full and equal enjoyment of rights secured to them by 42 U.S.C. § 2000a *et seq.*

## SECOND CAUSE OF ACTION
## DISCRIMINATION BASED ON RACE IN VIOLATION OF THE UNRUH CIVIL RIGHTS ACT (Cal. Civ. Code §51 *et seq.*)
### (As to all Defendants)

41.     Plaintiffs incorporate by reference the factual allegations set forth in paragraphs 1 through 40 above.

42.     Under the *Unruh Act,* all persons are entitled to full and equal accommodations, advantages, facilities, privileges, or services in **all business establishments,** including both private and public entities.

43.     The *Unruh Act* protects all persons against arbitrary and unreasonable discrimination by a business establishment based on, in pertinent part, race or color. *See* Cal. Civ. Code §51 *et seq*.

44.     Plaintiffs' tickets were changed, and Plaintiffs removed from the First Class Cabin because of their race.

45.     Defendants, acting through their officers, employees, and agents, have implemented a policy and practice of denying to African American persons, on account of race or color, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of their airplanes and boarding gates, on the same basis as they make such available to non-African American persons. This policy and practice has been carried out, among other ways, as follows: (i) Defendants have implemented terms and conditions for service of African American persons, such as removing African Americans from the First Class Cabin, to make other passengers feel safe and comfortable: (ii) providing  African American passengers with terms less favorable than the terms and conditions for service provided to white persons; (iii) Defendants treat African American customers less favorably than white customers and discourage African American persons from traveling First Class.

46.     As a direct and proximate result of the conduct of Defendants, Plaintiffs have suffered and will continue to suffer injuries, losses, and damages in an amount in excess of the jurisdictional minimum of this Court.

47.     Defendants' violation of Plaintiffs' rights as guaranteed by California Civil Code section 51 entitles Plaintiffs to recover from Defendants general and special damages, damages of up to

three times actual damages, but in no case less than four thousand dollars ($4,000), attorney's fees, and injunctive relief, all of which are provided for in Civil Code section 52 and are prayed for below.

48.     In committing the acts alleged in this complaint, Defendants knew or should have known that their actions were likely to injure Plaintiffs.  On information and belief, Defendants intended to cause injury to Plaintiffs and acted with a willful and conscious disregard of Plaintiffs' rights as secured by Civil Code section 51, thereby entitling Plaintiffs to recover damages of up to three times actual damages but in no case less than four thousand dollars ($4,000), pursuant to California Civil Code section 52, subdivision (a).

49.     Unless Defendants are restrained by a preliminary and permanent injunction, Plaintiffs will continue to suffer irreparable harm in that Defendants' discriminatory conduct will continue unless restrained, and Plaintiffs will continue to suffer injury. Plaintiffs have no adequate remedy at law because monetary damages, which may compensate for past acts, will not afford adequate relief for the fear, humiliation, and risk of injury that a continuation of Defendants' conduct, in denial of Plaintiffs' rights, will cause.

## **PRAYER FOR RELIEF**

1. For general damages according to proof;

2. For special damages according to proof;

3. For damages of up to three times actual damages but in no case less than four thousand dollars ($4,000), pursuant to California Civil Code section 52, subdivision (a);

4. For reasonable attorney's fees, according to proof, pursuant to California Civ. Code§ 52, subdivision (a);

5. For a preliminary injunction against Defendants, and each of them, enjoining Defendants from harassing or discouraging African American passengers from traveling first class.

6. For costs of suit, including reasonable attorney's fees; and,

7. For such other relief as the court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury as to all issues.


DATED: December 15, 2023                                    _/s/ Waukeen McCoy_____
                                                           WAUKEEN McCOY
                                                           Attorney for Plaintiffs